**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Jose Reyes Cuevas and Juan Jose Flores, on behalf of themselves and all other similarly-situated individuals,<br>*Plaintiffs*,<br>*v.*<br>Adon Farms Operations, LLC and Anthony Gilbert,<br>*Defendants.* | **COMPLAINT**<br>Civ. Action No.: 8:25-cv-00981 (MAD/PJE)<br>CLASS ACTION<br>JURY TRIAL DEMANDED |

Plaintiffs Jose Reyes Cuevas and Juan Jose Flores (collectively, "Plaintiffs"), by their attorneys the Worker Justice Center of New York, and on behalf of the putative Classes, complaining of Defendants Adon Farms Operations, LLC ("Adon Farms") and Anthony Gilbert ("Defendant Gilbert"), (collectively, "Defendants"), allege as follows:

## I. PRELIMINARY STATEMENT

1. Adon Farms is a large-scale business operation in Potsdam, New York consisting of approximately 1,400 milking cows, 1,400 heifers and calves, and 4,000 acres of crop land. Defendants' employees ensure that cows are fed and cared for and milked every eight hours, all year long.

2. Plaintiffs Jose Reyes Cuevas and Juan Jose Flores worked at Adon Farms, primarily milking and caring for the cows. Plaintiffs and other Hispanic employees typically worked at least twelve hours per day, six days per week, totaling approximately 72 hours per week. Sometimes Defendants demanded Plaintiffs work additional shifts, on their scheduled day of rest or immediately following a 12-hour workday. Defendants denied Plaintiffs and other Hispanic

employees meal breaks and sick time, even when seriously ill or injured. Defendants failed to pay Plaintiffs and other Hispanic workers for all the hours they worked, made unlawful deductions from their pay, prohibited them from leaving the farm without permission, and issued threats intended to coerce their continued labor.

3. Defendants worked Plaintiffs and other Hispanic employees to the point of exhaustion, consistently denying them legally protected meal breaks and days of rest. Anthony Gilbert frequently let himself in to Plaintiffs' house to wake Hispanic employees up and demand that they work, sometimes in the middle of the night. Defendant Gilbert used threats, intimidation and isolation to maintain near-total control over Plaintiffs and other Hispanic employees, ensuring a captive workforce that was generally too afraid to stand up for their rights or refuse Defendants' demands.

4. Plaintiffs and about a dozen Hispanic employees lived on the farm in a single-family house, owned by Defendants, which was infested with bedbugs and roaches. Defendants prohibited visitors and controlled surveillance cameras located inside and outside of the house. Despite the conditions, Defendants deducted rent from Plaintiffs' wages in excess of the lodging allowance permitted under the New York Labor Law.

5. Defendants prohibited Plaintiffs and other Hispanic employees from leaving the farm without permission, even to purchase groceries or seek medical attention.

6. Defendant Gilbert repeatedly threatened that Plaintiffs and other Hispanic employees would be arrested by immigration authorities if they ventured off the farm and sometimes threatened to call immigration authorities himself.

7. Plaintiffs observed that when Hispanic employees disobeyed Defendant Gilbert, including when they refused to work an additional shift, Gilbert immediately fired them, kicked

them out of their housing, and demanded that they leave the farm—even at night or in freezing cold temperatures. Ultimately, Plaintiff Flores met a similar fate, when Defendant Gilbert fired him for leaving the farm during his "free" time without permission.

8. Defendants subjected Plaintiffs and other Hispanic employees to materially different conditions of employment than their white non-Hispanic co-workers, subjecting them to substantially more control, surveillance, wage theft, intimidation, and verbally abusive, degrading treatment.

9. Upon information and belief, Defendants provided white, non-Hispanic workers with rights and benefits that they denied Hispanic workers, such as paid sick leave and paid vacation.

10. Plaintiffs bring this Class action on behalf of themselves and other individuals who currently work and/or previously worked for Defendants, under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1581 *et seq.*, the New York Labor Law ("NYLL"), 42 U.S.C. § 1981 ("Section 1981"), and the New York State Human Rights Law ("NYSHRL"). Plaintiffs seek, *inter alia*, their unpaid wages, reimbursement for unlawful deductions, liquidated damages, compensatory damages including damages for mental anguish and emotional distress, punitive damages, statutory damages, and attorneys' fees and costs.

## II. JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1581 *et seq.*, 42 U.S.C. § 1981 ("Section 1981"), and 28 U.S.C. §1331 and 1337.

12. With respect to the state law claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 in that the state law claims derive from a common nucleus of

operative fact and are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

13. Venue is appropriate in the Northern District of New York pursuant to 28 U.S.C. § 1391(b), as Defendants reside and do business in the Northern District of New York and the events giving rise to the claims occurred within this judicial district.

## III. THE PARTIES

14. Plaintiff Reyes Cuevas is an adult individual of Hispanic ethnicity.

15. Plaintiff Reyes Cuevas's primary language is Spanish.

16. Plaintiff Reyes Cuevas was employed by Defendants from approximately June 2023 to March 2024.

17. At all times relevant to this Complaint, Plaintiff Reyes Cuevas was an employee of Defendants as that term is defined by the New York Labor Law and the Human Rights Law.

18. Plaintiff Juan Flores is an adult individual of Hispanic ethnicity.

19. Plaintiff Flores's primary language is Spanish.

20. Plaintiff Flores was employed by Defendants from approximately 2019 to 2020 and again from December 2022 through September 2023.

21. At all times relevant to this Complaint, Plaintiff Flores was an employee of Defendants as that term is defined by the New York Labor Law and the Human Rights Law.

22. Defendant Adon Farms Operations, LLC is a domestic corporation doing business in the State of New York at 403 State Highway 72, Potsdam, NY 13676. Its address for service of process is 498 State Highway 72, Potsdam, NY 13676.

23. Adon Farms is an enterprise engaged in the business of raising cows and producing milk.

24. At all times relevant to this Complaint, Adon Farms was an employer of Plaintiffs as defined by the New York Labor Law and Human Rights Law.

25. Anthony Gilbert is an adult individual and resident of New York.

26. At all times relevant to this Complaint, Adon Farms was owned and controlled by Defendant Anthony Gilbert.

27. At all times relevant to this Complaint, Defendant Gilbert had the power, and did in fact exercise such power, to hire and fire employees of Adon Farms, set employees' wages and work schedules, retain time and/or wage records, and otherwise control the terms and conditions of employment of all employees of Adon Farms, including Plaintiffs.

28. At all times relevant to the Complaint, Defendant Gilbert had the power, and did in fact exercise such power, to create pay practices and policies for the corporate defendant.

29. At all times relevant to the Complaint, Defendant Gilbert had the power to stop any of Defendants' illegal pay practices.

30. At all times relevant to the Complaint, Defendant Gilbert had the power to direct and assign tasks, supervise employee work, and otherwise control the terms and conditions of employment of Plaintiffs.

31. At all times relevant to the Complaint, Defendant Gilbert was an employer of Plaintiffs as that term is defined by the New York Labor Law and the Human Rights Law.

**STATEMENT OF FACTS**

32. Defendants own and operate Adon Farms, located on approximately 4,000 acres of commercial farmland in Potsdam, NY.

33. Employees are responsible for milking each of the 1,400 mature milk cows, three times a day, 365 days a year, enabling the business to produce over 5 million gallons of milk per year. They clean and maintain facilities and provide care for mature cows, heifers and calves.

34. During Plaintiffs' employment, approximately 14 of Defendants' employees were of Hispanic ethnicity.

35. Defendants assigned Plaintiffs and other Hispanic employees the dirtiest, most physically demanding jobs and housed them on the farm in a single-family house which was infested with bedbugs and roaches. Only one bathroom functioned, while the other was in a constant state of disrepair. Several of the bedrooms did not have working heat.

36. Plaintiffs and other Hispanic employees regularly worked a minimum of 12 hours a day, six days a week, with little to no breaks, totaling a minimum of approximately 72 hours a week.

37. Defendant Gilbert regularly required Plaintiffs and other Hispanic employees to work through meal breaks, on their scheduled, legally-protected day of rest, or when sick and seriously injured. Sometimes Defendant Gilbert demanded that Plaintiffs work an additional 12-hour shift, immediately following their completion of their regular 12-hour shift, causing them to work 24 hours straight. Defendants retaliated against Hispanic employees who complained about these conditions or refused to work when Defendant Gilbert demanded.

38. Through threats, intimidation, and conspicuous firing, Defendant Gilbert intentionally fostered the understanding among Plaintiffs and other Hispanic employees that failing to comply with his demands would lead to immediate firing, loss of access to their home, expulsion from the farm, and arrest by immigration authorities.

39. Defendant Gilbert frequently threatened Hispanic workers that leaving the farm meant near-certain exposure to and arrest by immigration authorities. Defendant Gilbert periodically threatened to call immigration authorities and police on Hispanic employees.

40. Expulsion from the farm also meant being stranded on a remote, rural section of New York State Route 72, with no amenities in walking distance, no access to transportation, and nowhere to go.

41. On at least two occasions, when Defendant Gilbert fired employees and kicked them out of the house, the employees hid under the bed of another worker for multiple days rather than face the purported perils of immediately leaving the farm.

42. Defendant Gilbert further exercised control over Hispanic employees by screaming at them, sometimes inches from their face. He berated them with curse words and insults, causing fear and humiliation. He would bang on the door to the worker housing and on the doors to their individual bedrooms and scream at them inside of their home, sometimes waking them up after they had gone to sleep. He would call them into his office, slam the door and scream at them.

43. Defendant created a hostile workplace, permeated with discriminatory intimidation and control, directed by Defendant Gilbert to Plaintiffs and other Hispanic employees. The discrimination was so pervasive as to adversely alter the conditions of Plaintiffs' employment.

44. Surveillance was another method Defendants used to control and intimidate Hispanic workers. Defendants installed surveillance cameras in the living area of worker housing, outside their house, and in the employee break room. When Defendant Gilbert saw Hispanic employees attempting to take a break, he yelled at them to stop eating and get back to work. He frequently told them that he had installed cameras in their bedrooms.

45. Defendant Gilbert controlled Plaintiffs and other Hispanic employees by forbidding them from leaving the farm without permission, even to get medical attention or buy groceries. He enforced this prohibition as he did his other demands: by threatening immediate firing and eviction from their house.

46. Due to Defendants' prohibition on Hispanic workers leaving the premises without permission, Plaintiffs were dependent on Defendants for access to basic needs such as groceries, medicine, personal items and clothing. They were only permitted to order grocery deliveries from certain approved individuals, and often did not get a say in what groceries were purchased.

47. Defendant Gilbert routinely denied requests of Hispanic employees for time off due to illness or injury and denied requests to receive medical attention. Defendant Gilbert yelled at Hispanic employees when they made the requests and threatened them with firing.

48. Defendant Gilbert's firings, threats and intimidating behavior had a chilling effect on Plaintiffs and Hispanic workers, causing them to rarely request permission to seek medical attention or sick time and instead to routinely work while sick or injured. They knew permission would be denied, and they would be berated and humiliated for asking.

49. Another result of Defendant Gilbert's sequestration of Plaintiffs on the farm was that Defendants controlled how they could access their wages. Plaintiffs often had no choice but to sign and return their checks to Defendant Gilbert, who provided them with cash, often after having deducted money for various charges, or use the services of a truck that came to the farm and charged a fee for check-cashing services.

50. Defendant Gilbert further isolated Plaintiffs and other Hispanic workers by prohibiting them from having guests in their home and denying access to many vendors and service providers.

51. Defendant Gilbert did not treat white, non-Hispanic employees in this consistently abusive and coercive manner. Defendant Gilbert generally allowed white, non-Hispanic employees to take uninterrupted meal breaks.

52. Defendant Gilbert granted white, non-Hispanic employees at least one day of rest per week without demanding that they work on that day as needed.

53. Defendant Gilbert allowed white, non-Hispanic employees to take time off when sick or injured. Upon information and belief, white, non-Hispanic employees were compensated for that sick time.

54. Upon information and belief, White, non-Hispanic employees were paid at higher rates and given paid vacation time. In contrast, Plaintiffs and other Hispanic employees were not permitted any vacation time.

55. Defendants consistently, intentionally failed to pay Plaintiffs and other Hispanic employees for all the hours they worked. These unpaid wages should have been paid at an overtime rate, because Plaintiffs typically worked more than the state overtime threshold for farm work – 60 hours per week beginning in 2020 and 54 hours per week beginning in 2024 – every week.

56. Defendants made unlawful deductions from Plaintiffs' pay. Some of these deductions are reflected in the Plaintiffs' paystubs. Some deductions are not, because Defendant Gilbert cashed Plaintiffs' checks and deducted the amounts from the cash he provided them.

57. In exchange for a single bedroom in the roach- and bedbug-infested house, with one functioning bathroom for use by approximately 14 adults, Defendants deducted more than the maximum housing allowance from the weekly wages of Plaintiffs and other Hispanic employees, in violation of 12 N.Y.C.R.R. § 190-3.1(b)(2).

58. Defendants periodically made unauthorized deductions from Plaintiffs' pay for items such as mattresses, boots, and aprons in violation of NYLL § 193.

59. Defendants made unauthorized deductions from Plaintiff Flores's wages for having guests in the home.

60. Defendants deducted pay from Plaintiffs to cover the costs of damages caused during workplace accidents, in violation of 12 N.Y.C.R.R. § 190-5.1(a)(1).

61. Defendants failed to provide Plaintiffs with a written wage notice in Spanish (the language identified by each employee as the primary language at the time of their hiring), within 10 business days of their first day of employment, setting out their rates of pay and other information as required by NYLL § 195(a).

62. Defendants failed to provide Plaintiffs with an accurate written wage statement with their weekly payment of wages, setting forth their total pay, their hours during the pay period, and their regular and overtime rates of pay as required by NYLL § 195(3).

63. Defendants' failure to issue hiring notices in Plaintiffs' primary language and issuance of inaccurate wage statements directly contributed to the extent of wage theft suffered by Plaintiffs, as the lack of accurate information hindered their ability to track the amounts owed to them.

64. Defendants failed to pay Plaintiffs at a rate of one- and one-half times their regular hourly rate of pay, or one- and one-half times the applicable minimum wage, for every hour worked over the overtime threshold for farm work in a workweek.

65. Defendants were aware or should have been aware that applicable law required them to pay employees such as Plaintiffs for all hours worked and to pay employees such as Plaintiffs premium pay for all hours worked in excess of the overtime threshold.

66. Defendants failed to furnish proper and accurate wage statements to Plaintiffs and others similarly situated as required by NYLL § 195(3). The wage statements Defendants provided to Plaintiffs and others similarly situated were inaccurate as to the actual hours worked.

67. Because of Defendants' pattern of failing to pay their employees in full for the hours they worked and failing to comply with wage notice requirements, Plaintiffs and others similarly situated were deprived of the opportunity to spend their wages on necessary expenses, to save their wages in interest-bearing accounts, to support their families, or to otherwise invest their wages.

68. The legal requirement that the wage statements reflect all time worked was enacted, in part, to ensure workers like Plaintiffs and other similarly situated workers were better informed about their legal right to be paid for all time worked.

69. As a result, at least in part, of Defendants' obscuring the actual time worked and Plaintiffs' resulting lack of awareness about their legal rights to be paid, Plaintiffs and other similarly situated workers were delayed in learning about and taking action to recover their unpaid wages.

70. When Plaintiffs and Hispanic employees did speak up to advocate for their protected rights, Defendants retaliated against them, in violation of NYLL § 215. When they complained about unpaid wages, working on rest days and during breaks or asked for sick time, Defendant Gilbert berated them and threatened to fire them. This pattern of threatening and intimidating behavior further entrenched Defendants' consistent practice of wage theft and other abuses.

**Jose Reyes Cuevas**

71. Defendant Gilbert hired Plaintiff Jose Reyes Cuevas in June 2023.

72. Plaintiff Reyes Cuevas was employed at Adon Farms from June 2023 until March 2024.

73. During his employment at Adon Farms, Plaintiff Reyes Cuevas mowed fields using a tractor, milked cows, and cared for the cows in a variety of ways.

74. Defendants did not provide Plaintiff Reyes Cuevas with any written hiring notice, at the time of his hiring or at any time thereafter, explaining his rates and method of pay.

75. Plaintiff Reyes Cuevas typically worked Monday through Saturday, from 7am to 7pm.

76. Defendants usually failed to provide Plaintiff Reyes Cuevas with a 30-minute meal break, in violation of NYLL § 162(2).

77. During each 12-hour shift, he was frequently not permitted to take a break at all, or could take only a very short break to quickly eat and get back to work.

78. Upon information and belief, Defendants subtracted one hour per shift from Plaintiff Reyes Cuevas's weekly total, even though he typically had less than a 30-minute break.

79. Defendants sometimes required Plaintiff Reyes Cuevas to work on his day of rest, in violation of NYLL § 161.

80. Approximately twice per month from June through September, and at various other times during the rest of year, Defendant Gilbert demanded that Plaintiff Reyes Cuevas cover the shift of a worker who had failed to report to work. Plaintiff Reyes Cuevas would then have to work on his scheduled day of rest, or begin a shift immediately after finishing one, bringing his weekly hours up to approximately 84. This also meant Plaintiff Reyes Cuevas sometimes worked 24 hours in a row, without rest. Defendant Gilbert told Plaintiff Reyes Cuevas that if he did not work as he demanded, Defendant Gilbert would fire him.

81. Plaintiff Reyes Cuevas observed Defendant Gilbert fire other employees abruptly for refusing to work on their scheduled day of rest, and then immediately kick them out of the house and off the farm.

82. Defendant Gilbert did not permit Plaintiff Reyes Cuevas to take time off when he was ill or injured. On several occasions, when Plaintiff Reyes Cuevas was not feeling well and asked to rest, Defendant Gilbert told him he would look for someone else who really wanted to work to replace him as an employee. Plaintiff Reyes Cuevas felt he had no choice but to continue working while sick.

83. Plaintiff Reyes Cuevas and his late wife, who was also employed by Defendants, lived in an employer-owned, single-family house shared with about 12 other Hispanic employees, located on the farm.

84. Defendant Gilbert told Plaintiff Reyes Cuevas that he had installed cameras in the bedrooms. Defendant Gilbert forbade Plaintiff Reyes Cuevas from having visitors in their house.

85. Defendants made unauthorized deductions for rent from his paycheck and from that of his late wife, for the single room they shared in the house. To the best of his knowledge, Plaintiff Reyes Cuevas did not provide written authorization for that rent deduction.

86. Defendant Gilbert made other unauthorized deductions from his wages. On approximately two occasions, he deducted approximately $80 for boots and on another occasion, he deducted approximately $40 for an apron.

87. Defendant Gilbert did not permit Plaintiff Reyes Cuevas or his wife to leave the farm without permission. Defendant Gilbert threatened Plaintiff Reyes Cuevas that the area was so saturated with immigration authorities that if he left the farm he would be immediately arrested.

88. Defendant Gilbert threatened that he would call immigration authorities on Plaintiff Reyes Cuevas if he left the farm.

89. Defendant Gilbert did not permit Plaintiff Reyes Cuevas to obtain medical attention, go to the grocery store or attend to other personal needs without permission.

90. Plaintiff Reyes Cuevas had to pay someone to deliver groceries and personal items, but was not able to choose specific items, and paid a fee for that service.

91. Defendants falsified Plaintiff Reyes Cuevas's paystubs by indicating that he worked fewer hours per week than he actually did.

92. Defendants failed to pay Plaintiff Reyes Cuevas for every hour he worked.

93. Because he typically worked more than the overtime threshold, every hour for which he was not paid should have been at the overtime rate.

94. On the few occasions when Plaintiff Reyes Cuevas complained about being paid for fewer hours than he worked, Defendant Gilbert screamed at him and told him that he paid him well.

95. On one occasion, Defendant Gilbert further retaliated against him by forcing him to work additional hours without pay. On another occasion, Defendant Gilbert retaliated by cutting his hours before increasing them again.

96. In July 2023, while cutting a piece of metal on the farm, Plaintiff Reyes Cuevas got a piece of metal in his eye. He informed Defendant Gilbert, who told him to keep working. Plaintiff Reyes Cuevas continued to work while in extreme pain. He finally told Defendant Gilbert's son about the injury and Defendant Gilbert's wife eventually took him to the doctor. When they returned to the farm, Plaintiff Reyes Cuevas was in so much pain he sneaked back to

his house to rest, making an effort not to be seen, since he knew Defendant Gilbert would have directed him back to work.

97. On or about early March, 2024, Plaintiff Reyes Cuevas was forced to work two 12-hour shifts consecutively. During that 24-hour period, he was involved in a workplace accident in which a barn curtain was damaged.

98. Defendant Gilbert told Plaintiff Reyes Cuevas that he and his wife had to pay $1,500 for the damage. Plaintiff Reyes Cuevas continued working for several more days. On payday, Defendant Gilbert deducted $750 each from the paycheck of Plaintiff Reyes Cuevas and from his late wife. Defendant Gilbert then immediately fired and evicted Plaintiff Reyes Cuevas.

99. Plaintiff Reyes Cuevas, as a Hispanic employee, also experienced markedly different work conditions than white employees, as previously detailed in this complaint. For example, he did not receive vacation or sick time provided to white employees, had longer hours and more unpleasant work, and was treated more abusively.

**Juan Jose Flores**

100. Plaintiff Juan Jose Flores worked at Adon Farms from 2019 to 2020.

101. Plaintiff Flores returned to work there in December 2022 and remained employed there until September 2023.

102. During his employment at Adon Farms, Plaintiff Flores milked cows, worked in maternity, and cared for the cows in a variety of ways.

103. Plaintiff Flores typically worked Monday through Saturday, initially the night shift, from 7pm to 7am and later the day shift, from 7am to 7pm.

104. Defendants usually failed to provide Plaintiff Flores with a 30-minute meal break, in violation of NYLL § 162(2).

105. During each 12-hour shift, he was frequently not permitted to take a break at all, or could take only a very short break to quickly eat and get back to work.

106. Upon information and belief, Defendants subtracted one hour per shift from Plaintiff Flores's weekly total, even though he typically had less than a 30-minute break.

107. Sometimes Defendants required Plaintiff Flores to work on his day of rest, in violation of NYLL § 161.

108. Defendant Gilbert sometimes demanded that Plaintiff Flores cover the shifts of workers who had failed to report to work. Plaintiff Flores would then have to work on his scheduled day of rest, or begin a shift immediately after finishing one, bringing his weekly hours up to approximately 84. This also meant Plaintiff Flores sometimes worked 24 hours in a row, without rest. Defendant Gilbert stated that if Plaintiff Flores did not work as he demanded, Defendant Gilbert would fire him.

109. Plaintiff Flores observed Defendant Gilbert fire other Hispanic employees abruptly for refusing to work on their scheduled day of rest, and then immediately kick them out of the house and off the farm.

110. Plaintiff Flores lived in an employer-owned, single-family, house shared with about 13 other Hispanic employees, located on the farm.

111. Defendant Gilbert installed and controlled surveillance cameras in the common areas of the house and outside its entrance. Defendant Gilbert told Plaintiff Flores that he had installed cameras in the bedrooms. When Plaintiff Flores had a family member stay with him in his room, Defendant Gilbert deducted charges for the relative's stay from Plaintiff Flores's wages.

112. On one occasion, when Plaintiff Flores was severely bitten by bedbugs, he requested a new mattress. Defendant Gilbert deducted $250 from his wages for the cost of the mattress. When Plaintiff Flores complained about the housing conditions, Defendant Gilbert threatened to fire him.

113. Defendants deducted rent from Plaintiff Flores's paycheck, in excess of the lodging allowance permitted under the New York Labor Law.

114. To the best of his knowledge, Plaintiff Flores did not provide written authorization for that rent deduction.

115. Defendant Gilbert made other unauthorized deductions from Plaintiff Flores's wages, such as for boots and aprons.

116. On one occasion, Plaintiff Flores broke a barn curtain while working. Defendant Gilbert charged him $2000 for this. Defendant Gilbert unlawfully deducted $200 from Plaintiff Flores's pay, for ten consecutive weeks.

117. Defendant Gilbert did not permit Plaintiff Flores to leave the farm. Defendant Gilbert threatened Plaintiff Flores that the area was so saturated with immigration authorities that if he left the farm he would be immediately arrested.

118. Defendant Gilbert did not permit Plaintiff Flores to obtain medical attention, go to the grocery store or attend to other personal needs without permission.

119. Plaintiff Flores had to pay someone to deliver groceries and personal items, but was not able to choose specific items, and paid a fee for that service.

120. Defendants falsified Plaintiff Flores's paystubs by indicating that he worked fewer hours per week than he actually did.

121. Defendants failed to pay Plaintiff Flores for every hour he worked.

122. Because he typically worked more than the overtime threshold, every hour for which he was not paid should have been at the overtime rate.

123. Defendants did not permit Plaintiff Flores to take time off when he was sick or injured.

124. On one occasion, Plaintiff Flores was injured in a workplace accident in which he was crushed by a cow and severely hurt his back. Plaintiff Flores asked for time off to recover, but Defendant Gilbert demanded that he continue working and said that if Plaintiff Flores didn't want to work, he could quit. After about three days, the pain became so intolerable he did see a doctor. Upon his return from the doctor, Defendant Gilbert demanded that he go right back to work. Plaintiff Flores continues to experience back pain from this injury.

125. On or about September 2023, Defendants fired Plaintiff Flores for leaving the premises without authorization. Plaintiff Flores had left the farm to buy groceries. When Defendant Gilbert found out, he fired Plaintiff Flores and threw all his belongings on the ground outside of the house. Plaintiff Flores avoided immediate expulsion from the farm by hiding under the bed of another worker.

126. Plaintiff Flores, as a Hispanic employee, also experienced markedly different work conditions than white employees, as previously detailed in this complaint. For example, he did not receive vacation or sick time provided to white employees, had longer hours and more unpleasant work, and was treated more abusively.

## IV. CLASS ACTION ALLEGATIONS

127. Plaintiffs Jose Reyes Cuevas and Juan Jose Flores bring this lawsuit as a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and seek to certify the following classes:

(a) All current and former non-managerial employees of Hispanic ethnicity who worked for Defendants as farm workers at any time within the ten (10) years prior to the filing of this case and the date of final judgment in this matter (the "Forced Labor Class").

(b) All current and former non-managerial employees of Hispanic ethnicity who worked for Defendants as farm workers at any time within the six (6) years prior to the filing of this case and the date of final judgment in this matter (the "Labor Law Class").

(c) All current and former non-managerial employees of Hispanic ethnicity who worked for Defendants as farm workers at any time within the four (4) years prior to the filing of this case and the date of final judgment in this matter (the "Section 1981 Class").

(d) All current and former non-managerial employees of Hispanic ethnicity who worked for Defendants as farm workers at any time within the three (3) years prior to the filing of this case and the date of final judgment in this matter (the "Human Rights Law Class").

128. The persons in each Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are dozens of Class Members in each Class.

129. There are questions of law and fact common to the Classes, which predominate over any questions affecting only individual members, in that Class members worked in similar job capacities at a single farm and were subjected to the same pay practices and pattern of threats, intimidation, control and abuse perpetrated by Defendants. Some common questions include:

a. Whether Defendants had a policy or practice of reducing Class Members' work time for "lunch breaks," whether or not the employee actually had a bona fide meal break;

b. Whether Defendants had a policy or practice of making unauthorized deductions from wages, including for rent, boots, aprons, and breakage;

c. Whether Defendants failed to provide hiring notices;

d. Whether Defendants failed to provide accurate wage statement notices;

e. Whether Defendants subjected Hispanic employees to inferior working conditions than White employees;

f. Whether the work performed by the Class constituted forced labor, in violation of the TVPRA; and

g. Whether Defendants' conduct constitutes labor trafficking, in violation of the TVPRA.

130. The claims of the named Plaintiffs are typical of the claims of the Class Members, as they worked in the same work environment, for the same boss, and under the same employment conditions as the individuals they seek to represent.

131. The named Plaintiffs understand their responsibility to fairly and adequately protect the interests of the Classes and agree to do so.

132. Plaintiffs are represented by attorneys from the Worker Justice Center of New York who have experience in employment disputes, trafficking claims, and civil rights litigation, including class actions.

133. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, which involves a substantial number of low-wage workers who lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. A class action will permit a large number of similarly situated persons to adjudicate their common

claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would create.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Trafficking Victims Protection Reauthorization Act – Forced Labor**
**On Behalf of Plaintiffs and the Forced Labor Class**

134. Plaintiffs, on behalf of themselves and the Forced Labor Class, restate, reallege and incorporate by reference all of the previous allegations as if fully set forth herein.

135. Plaintiffs are authorized to bring this civil action claim against Defendants pursuant to the civil remedies provision of 18 U.S.C. § 1595(a).

136. In violation of 18 U.S.C. § 1590, Defendants forced labor from Plaintiffs and the Forced Labor Class by engaging in a pattern of threats and intimidation, illegally underpaying workers, and controlling key aspects of their lives, including their ability to leave the farm premises, access groceries, receive visitors, live in habitable conditions, and seek medical attention. Defendants knowingly created or exploited the conditions to ensure a captive work force for demanding, hazardous, and low-paying jobs on their farm that would otherwise have been difficult or costly to fill.

137. In violation of 18 U.S.C. § 1589, Defendants knowingly obtained labor from Plaintiffs by means of serious harm or threats of serious harm, and by means of a scheme, plan, or pattern intended to cause Plaintiffs to believe that, if they did not perform labor, they would suffer serious harm and/or abuse of the legal process.

138. Defendants' conduct is "serious harm" as described in 18 U.S.C. § 1589(c)(2) because it is "sufficiently serious, under all the surrounding circumstances, to compel a

reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm."

139. Defendants' unlawful scheme or pattern included creating a climate of social isolation, subjecting the Plaintiffs and Class Members to harsh living conditions, underpaying them, creating a belief that the employer has power over deportation, and creating a climate of fear about the immediate loss of housing that would accompany the immediate loss of income upon being fired for failing to comply with Defendants' demands.

140. Due to Defendants' TVPRA violations, Plaintiffs and members of the Forced Labor Class are entitled to compensatory and punitive damages, as well as costs and reasonable attorneys' fees.

## SECOND CAUSE OF ACTION
**Section 1981 – Discrimination**
**On Behalf of Plaintiffs and the Section 1981 Class**

141. Plaintiffs, on behalf of themselves and the Section 1981 Class, restate, reallege and incorporate by reference all of the previous allegations as if fully set forth herein.

142. By the actions set forth above, among others, Defendants have discriminated against Plaintiffs, in violation of Section 1981.

143. Defendants discriminated against Plaintiffs and the Section 1981 Class, and subjected them to a hostile work environment, because of their Hispanic race and ethnicity.

144. Upon information and belief, Defendants paid Plaintiffs and the Section 1981 Class lower wages than white, non-Hispanic employees and deprived them of rights or benefits provided to white, non-Hispanic employees such as sick time, uninterrupted meal breaks and paid vacation, because of their Hispanic race and ethnicity.

145. As a result of Defendants' illegal actions, Plaintiffs and the Section 1981 Class have suffered, and continue to suffer, economic harm, mental anguish, and emotional distress for which they are entitled to damages.

146. Defendants' actions were malicious, willful, and wanton violations of Section 1981 for which Plaintiffs are entitled to an award of punitive damages.

**THIRD CAUSE OF ACTION**
**New York State Human Rights Law – Discrimination**
**On Behalf of Plaintiffs and the Human Rights Law Class**

147. Plaintiffs, on behalf of themselves and the Human Rights Law Class, restate, reallege and incorporate by reference all of the previous allegations as if fully set forth herein.

148. By the actions set forth above, among others, Defendants have discriminated against Plaintiffs in violation of the New York State Human Rights Law.

149. Defendants discriminated against Plaintiffs and the Human Rights Law Class by affording them inferior terms, conditions and privileges of employment because of their race and ethnicity.

150. Defendants discriminated against Plaintiffs and the Human Rights Law Class by creating and fostering a work environment at Adon Farms that was intimidating, hostile, and offensive to Plaintiffs and the Human Rights Law Class, on the basis of their race and ethnicity.

151. Upon information and belief, Defendants also paid Plaintiffs and the Human Rights Law Class lower wages than white, non-Hispanic employees and deprived them of rights or benefits provided to white, non-Hispanic employees such as sick time, uninterrupted meal breaks and paid vacation, on the basis of their race and ethnicity.

152. Defendants' actions were in direct violation of the New York State Human Rights Law, Executive Law § 290 *et seq*.

153. As a result of Defendants' willful and illegal actions, Plaintiffs and Class Members have suffered, and continue to suffer economic harm, mental anguish, and emotional distress for which they are entitled to damages.

**FOURTH CAUSE OF ACTION**
**NYLL – Failure to Pay Wages for All Hours Worked**
**On Behalf of Plaintiffs and the Labor Law Class**

154. Plaintiffs, on behalf of themselves and the NYLL Class, restate, reallege and incorporate by reference all of the previous allegations as if fully set forth herein.

155. Defendants willfully failed to pay Plaintiffs and members of the NYLL Class wages for all hours worked, in violation of NYLL §§ 193, 195.

156. Due to Defendants' New York Labor Law violations, Plaintiffs and the NYLL Class are entitled to recover from Defendants their unpaid overtime compensation, liquidated damages, reasonable attorneys' fees, costs of the action, and interest, pursuant to NYLL §§ 198 and 663.

**FIFTH CAUSE OF ACTION**
**NYLL – Overtime Compensation Violations**
**On Behalf of Plaintiffs and the Labor Law Class**

157. Plaintiffs, on behalf of themselves and the Labor Law Class, restate, reallege and incorporate by reference all of the previous allegations as if fully set forth herein.

158. Plaintiffs and members of the Labor Law Class typically worked more hours in a week than the overtime threshold for farm work, which was 60 hours per week beginning in 2020 and 54 hours per week beginning in 2024.

159. Defendants willfully failed to pay Plaintiffs and members of the Labor Law Class overtime compensation at a rate of at least one-and-a-half times the regular rate of pay for each hour they worked in excess of the overtime threshold for farm work.

160. Defendants' failure to pay the required wages as set forth above was willful within the meaning of NYLL §§ 198, 663, and 681.

161. Due to Defendants' New York Labor Law violations, Plaintiffs and the NYLL Class are entitled to recover from Defendants their unpaid overtime compensation, liquidated damages, reasonable attorneys' fees, costs of the action, and interest, pursuant to NYLL §§ 198 and 663.

**SIXTH CAUSE OF ACTION**
**NYLL – Failure to Provide Hiring Notices and Wage Statements**
**On Behalf of Plaintiffs and the NYLL Class**

162. Plaintiffs, on behalf of themselves and the NYLL Class, restate, reallege and incorporate by reference all of the previous allegations as if fully set forth herein.

163. Defendants failed to provide Plaintiffs and members of the NYLL Class with a hiring notice as required by NYLL § 195(1)(a).

164. Defendants failed to provide Plaintiffs and members of the NYLL Class with an accurate wage statement with each payment of wages, as required by NYLL § 195(3).

165. Due to Defendants' NYLL violations, Plaintiffs and the NYLL Class are entitled to statutory damages.

**SEVENTH CAUSE OF ACTION**
**NYLL – Unlawful Wage Deductions**
**On Behalf of Plaintiffs and the NYLL Class**

166. Plaintiffs, on behalf of themselves and the NYLL Class, restate, reallege and incorporate by reference all of the previous allegations as if fully set forth herein.

167. Defendants made deductions from wages from Plaintiffs and the NYLL Class, including for aprons, boots, mattresses, and repairs, that were neither expressly authorized in writing by the employee nor for the benefit of the employee, in violation of NYLL § 193(1)(b).

168. Defendants made deductions for housing from the wages of Plaintiffs and the NYLL Class that were not expressly authorized in writing by the employee, in violation of NYLL § 193(1)(b), which at times exceeded the maximum housing allowance which may be considered as part of the basic minimum wage, in violation of 12 N.Y.C.R.R. § 190, and which in any event were not permissible due to the uninhabitable conditions of the housing provided.

169. Due to Defendants' New York Labor Law violations, Plaintiffs and the NYLL Class are entitled to recover from Defendants the unlawfully deducted wages, liquidated damages, reasonable attorneys' fees, costs of the action, and interest, pursuant to NYLL §§ 198 and 663.

## EIGHTH CAUSE OF ACTION
**NYLL – Retaliation**
**On Behalf of Plaintiff Reyes Cuevas**

170. Plaintiff Reyes Cuevas restates, realleges and incorporates by reference all of the previous allegations as if fully set forth herein.

171. Defendants have retaliated against Plaintiff Reyes Cuevas, in violation of NYLL § 215(1)(a).

172. Defendants briefly and drastically cut Plaintiff Reyes Cuevas's hours of work and then forced him to work extra hours without pay in retaliation for Plaintiff Reyes Cuevas's legally protected complaint about Defendants' to failure to pay him for all of his hours.

173. As a result of Defendants' illegal retaliation, Plaintiff Reyes Cuevas has suffered economic harm, mental anguish, and emotional distress, for which he is entitled to damages.

174. Due to Defendants' retaliation, Plaintiff Reyes Cuevas is entitled to recover from Defendants, jointly and severally, all appropriate damages, including liquidated damages, emotional distress damages, reasonable attorneys' fees, and costs of the action, pursuant to NYLL § 215(2)(a).

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

175. Assume jurisdiction over this action;

176. Certify this case as a class action in accordance with Fed. R. Civ. P. 23;

177. Declare Defendants' conduct complained of herein to be in violation of Plaintiffs' and the respective Class members' rights under the Trafficking Victims Protection Reauthorization Act, New York Labor Law, Section 1981, and the New York State Human Rights Law;

178. Grant judgment to Plaintiffs and Forced Labor Class members on their Trafficking Victims Protection Reauthorization Act claims and award all appropriate relief to which they are entitled;

179. Grant judgment to Plaintiffs and Section 1981 Class members on their Section 1981 claims and award all appropriate relief to which they are entitled;

180. Grant judgment to Plaintiffs and the Human Rights Law Class members on their New York Human Rights Law claims and award all appropriate damages, fines and penalties as provided for by statute;

181. Grant judgment to Plaintiffs and NYLL Class members on their NYLL claims and order Defendants to pay all wages owed and all damages, fines and penalties to which they are entitled under the NYLL;

182. Award Plaintiffs and respective class members all other damages to which they are entitled;

183. Award Plaintiffs reasonable attorneys' fees, costs and interest; and

184. Award Plaintiffs such other relief as the Court deems appropriate.

DATED: Kingston, NY
July 24, 2025

RESPECTFULLY SUBMITTED,

*/s/ Maureen Hussain*

Worker Justice Center of New York
Maureen Hussain
Olivia Post Rich
Alana Roth
9 Main Street
Kingston, NY 12401
(845) 331-6615
mhussain@wjcny.org
opostrich@wjcny.org
aroth@wjcny.org

*Attorneys for Plaintiffs*