**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JOSE REYES CUEVAS and JUAN JOSE FLORES, on behalf of themselves and all other similarly-situated individuals,

Plaintiffs,

No. 8:25-CV-0981 (MAD/PJE)

v.

ADON FARMS OPERATIONS, LLC and ANTHONY GILBERT,

Defendants.

---

**APPEARANCES:**

Worker Justice Center of New York
9 Main Street
Kingston, New York 12401
&
Worker Justice Center of NY
1187 Culver Road
Rochester, New York 14609
Attorneys for Plaintiffs

ALANA L. ROTH, ESQ.
MAUREEN HUSSAIN, ESQ.

OLIVIA POST RICH, ESQ.

Coughlin, Gerhart Law Firm - Binghamton Office
P.O. Box 2039
99 Corporate Drive
Binghamton, New York 13902-2039
Attorneys for Defendants

JOSEPH J. STEFLIK , JR., ESQ.
CANDICE GELLER, ESQ.

**PAUL J. EVANGELISTA**
**UNITED STATES MAGISTRATE JUDGE**

## MEMORANDUM-DECISION & ORDER

### I. Introduction

The present discovery dispute arose during the July 13, 2026, deposition of plaintiff Juan Jose Flores, when plaintiffs' counsel objected to certain questions concerning Flores' identification documents, Social Security number, immigration status, and related matters, and instructed him not to answer. After the parties conferred and met with the Court, they submitted briefing on the disputed discovery, with defendants filing a memorandum of law on July 27, 2026, dkt. no. 29, and plaintiffs filing a memorandum in support of their request for a protective order on July 28, 2026. *See* Dkt. No. 30.

On October 20, 2026, plaintiffs submitted a supplemental letter identifying text messages produced in discovery and deposition testimony of Defendant Anthony Gilbert that, according to plaintiffs, further supported their request for protective relief. *See* Dkt. No. 38. Plaintiffs seek a protective order concerning seven categories of information: (1) identification documents presented for employment; (2) Social Security numbers; (3) immigration status; (4) residential addresses for the preceding ten years; (5) current residential addresses; (6) individuals with whom plaintiffs currently reside; and (7) tax returns. *See* Dkt. No. 30. Plaintiffs oppose the requested discovery principally on the grounds that the information sought is irrelevant to any material claim or defense and concerns highly-sensitive personal matters whose disclosure would expose them to intimidation, embarrassment, and potential retaliation. *See* Dkt. 30 at 3-6.

In their November 2, 2026, submission, defendants expressly narrowed the discovery relief sought. *See* Dkt. No. 40. Defendants withdrew their request for plaintiffs' post-employment residential addresses and identified only four categories as

remaining in dispute: (1) identification documents presented for employment at Adon Farms and the information contained therein, (2) Social Security numbers provided to Adon Farms, (3) plaintiffs' immigration status, and (4) income tax returns.[1] *See id*. at 1-2. Defendants expressly requested denial of plaintiffs' protective order application only as to those four categories. *See id.* at 2. Defendants contend that the requested discovery is relevant principally to plaintiffs' "honesty and credibility."[2] Dkt. No. 40 at 1.

The Court construes defendants' November 2 submission as withdrawing their opposition to protective relief concerning residential addresses and household information outside the four categories expressly identified. Because defendants no longer seek discovery concerning those subjects, plaintiffs' application is granted as unopposed to that extent. The Court, therefore, limits its substantive analysis to the four contested categories. This determination does not preclude a subsequent application upon a showing of good cause should circumstances materially change.

For the reasons that follow, the Court grants plaintiffs' motion for a protective order.

## II. **Relevant Background**

Plaintiffs Jose Reyes Cuevas and Juan Jose Flores, former employees of defendant Adon Farms Operations, LLC, allege that defendants subjected them and other Hispanic workers to discriminatory working conditions, wage violations, and

---

[1] Defendants initially refer to "federal income tax returns" in their memorandum of law, dkt. no. 29 at 14-15, but subsequently use the broader term "tax returns" in their supplemental submission, dkt. no. 40 at 1–2. Plaintiffs likewise refer generally to "tax returns" in seeking protective relief. *See* Dkt. No. 30 at 12-13. Accordingly, the Court refers to the disputed category as "income tax returns."

[2] Defendants also argue that plaintiff Flores waived his Fifth Amendment privilege against self-incrimination by testifying that he used false identification documents before declining to answer further questions concerning those documents. *See* Dkt. No. 29 at 4-8. As the Court concludes that further questioning concerning Flores' use of allegedly false identification documents is not warranted under Rule 26(b)(1)'s relevance and proportionality requirements, *see infra* Part IV. A, it need not address whether Flores waived his Fifth Amendment privilege against self-incrimination.

coercive labor practices. *See* Dkt. No. 1, ¶¶ 2-9, at 1-3. Specifically, plaintiffs allege that defendants required them to work excessive hours without adequate compensation, restricted their freedom of movement, maintained substandard housing conditions, and used threats of immigration enforcement and arrest to compel their continued labor. *See id.* ¶¶ 35-39, 44, 55-56, at 6-9; ¶¶ 83, 87-88, at 13-14; ¶¶ 110, 117, 120, at 16-17. Plaintiffs assert claims under the Trafficking Victims Protection Reauthorization Act, 42 U.S.C. § 1981, the New York State Human Rights Law, and the New York Labor Law, and seek unpaid wages, statutory damages, compensatory damages for emotional distress, and other relief. *See Id.* ¶¶ 10, 134-174, at 3, 21-26. Of relevance to the present discovery dispute, plaintiffs allege that defendants exploited their perceived vulnerability to immigration enforcement through threats and intimidation. *See id.* ¶¶ 6, 38-39, 88, 137-139, at 2, 6-7, 14, 21-22. The Complaint does not, however, identify plaintiffs' actual immigration status, Social Security numbers, or the authenticity of their employment identification documents as independent elements of their claims.

## III. **Applicable Law**

### A. **Scope of Discovery and Protective Orders**

Federal Rule of Civil Procedure 26(b)(1) permits discovery of nonprivileged matters that are relevant to any party's claim or defense and proportional to the needs of the case. In assessing proportionality, courts consider the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, their resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *See* FED. R. CIV. P. 26(b)(1). Although information need not be admissible in evidence to be

discoverable, discovery remains limited by the requirements of relevance and proportionality. *See id.*; *see also Cohen v. Altman,* No. 19-CV-274 (TJM/TWD), 2021 WL 6106432, at *1 (N.D.N.Y. Jun. 4, 2021) ("Relevance is a matter of degree, and the standard is applied more liberally in discovery than it is at trial.").

Pursuant to Rule 26(c)(1), a court may, for good cause, issue an order protecting a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Such relief may include prohibiting discovery altogether, limiting the subjects of examination, or prescribing the terms under which discovery may proceed. Fed. R. Civ. P. 26(c)(1)(A)-(D). Where the discovery is relevant, the party seeking protection bears the burden of demonstrating good cause, and the decision whether to grant a protective order, as well as the nature and extent of any protection, rests within the Court's broad discretion. *See Dove v. Atlantic Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992) (citing *Penthouse Int'l, Ltd. v. Playboy Enterprises*, 663 F. 2d 371, 391 (2d Cir. 1981)). "[T]he appropriateness of protective relief from discovery depends upon a balancing of the litigation needs of the discovering party and any countervailing protectible interests of the party from whom discovery is sought." *Apex Oil Co. v. DiMauro,* 110 F.R.D. 490, 496 (S.D.N.Y. 1985); *accord Duling v. Gristede's Operating Corp.,* 266 F.R.D. 66, 71-72 (S.D.N.Y. 2010).

B. **Immigration-Related Discovery and Credibility**

Courts within the Second Circuit have generally recognized that a plaintiff's immigration status is not relevant to determining whether an employer violated federal or state wage-and-hour laws and that discovery concerning such status may have an intimidating or chilling effect on workers seeking to enforce their statutory rights. *See*

*Rosas v. Alice's Tea Cup, LLC*, 127 F. Supp. 3d 4, 9-11 (S.D.N.Y. 2015); *Topo v. Dhir*, 210 F.R.D. 76, 78-79 (S.D.N.Y. 2002). This concern also extends to discovery concerning employment authorization and identifying information associated with immigration status. *See Rosas*, 127 F. Supp. 3d at 5-6, 9-10 (granting protective relief against immigration status and work authorization discovery where the defendants also sought admissions concerning allegedly false Social Security numbers); *see also Uto v. Job Site Servs. Inc.*, 269 F.R.D. 209, 211-12 (E.D.N.Y. 2010) (granting protective order barring discovery of the plaintiffs' Social Security numbers and information directly or indirectly concerning their immigration status, where the defendants failed to establish relevance of such information to plaintiffs' wage-and-hour claims).

Courts have similarly restricted discovery into immigration status in employment discrimination actions, particularly where the plaintiffs do not seek back pay, front pay, or reinstatement. *See EEOC v. DiMare Ruskin, Inc.*, No. 2:11-CV-158, 2012 WL 12067868, at *4, 5 (M.D. Fla. Feb. 15, 2012) (prohibiting immigration status discovery where the information was irrelevant to discrimination liability and claimants did not seek back pay, front pay, or reinstatement) (citing *See Avila-Blum v. Casa de Cambio Delgado, Inc.*, 236 F.R.D. 190, 191-92 (S.D.N.Y. 2006) (upholding protective order barring immigration status discovery in employment discrimination action where its limited probative value was outweighed by the potential prejudice and chilling effect of disclosure)). In such circumstances, the limited probative value of immigration status information must be balanced against the potential chilling effect its disclosure may have on workers seeking to enforce their rights under employment discrimination laws. *See EEOC,* 2012 WL 12067868 at *4, 5; *Avila-Blum*, 236 F.R.D. at 191-92.

Although a witness' credibility is always at issue, a generalized interest in challenging credibility does not, standing alone, justify broad inquiry into a plaintiff's immigration status where such discovery may discourage workers from pursuing employment-related claims and undermine enforcement of statutory employment protections. *See Avila-Blum*, 236 F.R.D. at 191-92; *see generally Flores v. Amigon*, 233 F. Supp. 2d 462, 465 (E.D.N.Y. 2002) (granting protective order, finding that immigration information was not relevant to defendants' defense, and even if it were relevant, potential prejudice far outweighed minimal probative value). Nevertheless, where a defendant possesses documentation supporting an allegation that employment records were falsified or otherwise establishes a good-faith basis for that belief, narrowly-tailored questioning concerning those records may be permissible without authorizing broader inquiry into immigration status. *See id.* at 192. Thus, the relevance of alleged falsification must be evaluated in light of the particular facts and issues presented, balanced against the potential prejudice of disclosing sensitive immigration-related information.

### C. **Discovery of Income Tax Returns**

Although federal income tax returns are not absolutely privileged from discovery, courts within the Second Circuit generally apply a heightened standard before compelling their disclosure because of the sensitive information they contain and the public interest in encouraging accurate tax reporting. *See Trilegiant Corp. v. Sitel Corp.*, 272 F.R.D. 360, 368 (S.D.N.Y. 2010); *see also Uto*, 269 F.R.D. at 212-13. Under that standard, the party seeking disclosure must establish both that the returns are relevant to the claims or defenses and that a compelling need exists because the information

sought is not otherwise readily obtainable. *See Trilegiant Corp.,* 272 F.R.D. at 368. Where the relevant financial information is available from other, less-intrusive sources, disclosure of complete tax returns ordinarily is not warranted. *See Rosas*, 127 F. Supp. 3d at 11.

## IV. **Discussion**

### A. **Identification Documents Presented for Employment**

Defendants contend that questioning plaintiffs concerning identification documents presented during the hiring process is necessary to investigate alleged falsification, verify plaintiffs' identities, and assess the authenticity and reliability of employment records. *See* Dkt. No. 29 at 4-11. Defendants particularly rely on plaintiff Flores' reported acknowledgment during his deposition that he used false or "crooked" identification documents while employed by Adon Farms. *See id.* at 4-6. According to defendants, that testimony provides a good-faith basis for additional inquiry concerning the documents and the representations made during employment. *See id.* at 8-11.

The Court recognizes that allegations of falsified employment records may, in appropriate circumstances, provide a basis for limited questioning concerning a witness's credibility. *See Avila-Blum*, 236 F.R.D. at 192. Nevertheless, the existence of a good-faith basis for suspecting falsification does not automatically establish that further inquiry into the underlying documents is relevant and proportional to the needs of the litigation.

Here, defendants have admitted that Adon Farms employed both plaintiffs during the time periods alleged in the Complaint. *See* Dkt. No. 6 ¶ 1; Dkt. No. 1 ¶¶ 16, 20. Moreover, the identification documents at issue were presented to defendants during

the hiring process and are, therefore, documents already within defendants' possession or knowledge. Defendants have not adequately demonstrated how additional questioning concerning those documents would materially advance the resolution of the disputed wage, discrimination, or forced-labor claims. Nor have defendants identified a specific discrepancy in the employment records that cannot be evaluated through the documents already available or through other, less intrusive discovery. Although defendants suggest that alleged falsification may undermine plaintiffs' credibility generally, they have not sufficiently established that further examination concerning the identification documents would resolve a material factual dispute concerning plaintiffs' hours, wages, working conditions, or alleged coercion.

The Court has also considered Flores' reported acknowledgment concerning false identification. That testimony may provide a basis for challenging his credibility, but it does not necessarily establish a need for additional inquiry into potentially sensitive immigration-related information. The Court further notes that defendants have not identified comparable testimony or other particularized evidence of falsification by plaintiff Reyes Cuevas.

Under these circumstances, the Court concludes that the marginal benefit of the proposed additional questioning is outweighed by its potential prejudice and its limited importance to resolving the claims and defenses. *See*, *e.g.*, *Flores*, 233 F. Supp. 2d at 465. Accordingly, plaintiffs' request for a protective order concerning further questioning about identification documents presented for employment is granted.

B. **Social Security Numbers**

Defendants seek permission to question plaintiffs concerning the Social Security numbers they provided to Adon Farms, asserting that the information may reveal false representations bearing on plaintiffs' credibility. *See* Dkt. No. 40 at 1-2. The Court finds that defendants have not established a sufficient connection between the requested information and any material issue in the litigation. Plaintiffs' claims concern alleged violations of wage-and-hour requirements, discriminatory treatment, and coercive labor practices. Whether plaintiffs provided valid Social Security numbers during employment does not, without more, establish whether defendants complied with their statutory obligations.

Moreover, Social Security numbers constitute sensitive identifying information that may indirectly reveal an individual's immigration status. Courts have recognized that discovery seeking such information in employment litigation may create risks of intimidation and discourage enforcement of statutory rights. *See Rosas*, 127 F. Supp. 3d at 9-11.

Defendants' asserted interest in investigating suspected falsification does not overcome these concerns on the present record. Defendants have not sufficiently explained why additional questioning concerning the Social Security numbers themselves is necessary to resolve a disputed issue or why any legitimately relevant information could not be obtained from existing employment and payroll records. Accordingly, the Court concludes that the requested discovery is not proportional to the needs of the case, and plaintiffs' request for protective relief concerning Social Security numbers is granted.

### C. **Immigration Status**

Defendants maintain that discovery concerning plaintiffs' immigration status is warranted because they have reason to believe that plaintiffs provided falsified immigration documentation and because such information may bear on their credibility. *See* Dkt. No. 40 at 1-2. Defendants expressly state that their asserted justification concerns alleged falsification rather than immigration status standing alone. *See id.* at 2.

The Court is not persuaded that this distinction establishes a sufficient basis for the requested discovery. Courts within this Circuit have generally recognized that a worker's immigration status is not material to whether an employer complied with applicable wage-and-hour requirements and that permitting such discovery may discourage workers from pursuing statutory employment claims. *See Rosas*, 127 F. Supp. 3d at 9–11; *Topo*,210 F.R.D. at 78-79.

Plaintiffs' discrimination claims likewise do not establish a need for the requested information. Whether defendants subjected plaintiffs to discriminatory terms and conditions of employment based on race or ethnicity does not depend upon plaintiffs' actual immigration status. Moreover, plaintiffs expressly represent that they do not seek front pay, back pay, or lost wages in connection with their discrimination claims. *See* Dkt. No. 30 at 8. Thus, the potential relevance of immigration status to those categories of damages is not implicated. *See EEOC, 2012 WL 12067868 at *4, 5.*

The Court recognizes that plaintiffs' forced-labor claims involve allegations that defendants threatened immigration enforcement to compel plaintiffs' continued employment. *See* Dkt. No. 1 ¶¶ 38-39, 87-88, 137-139. Those allegations may render the existence, content, and alleged coercive effect of such threats relevant to the litigation. They do not, however, necessarily place plaintiffs' actual immigration status at

issue. *See Topo*, 210 F.R.D. at 79 (finding the plaintiff's immigration status collateral to her trafficking claim and granting protective relief against discovery into that status). Rather, the alleged coercive effect of a threat may depend upon a worker's perception of vulnerability to immigration enforcement, regardless of whether the worker was actually subject to removal. Accordingly, the relevance of alleged immigration-related threats does not, standing alone, establish that plaintiffs' actual immigration status is discoverable.

Further, plaintiffs have submitted evidence concerning defendant Gilbert's efforts to ascertain their whereabouts, including text messages referring to the possibility of plaintiff Reyes Cuevas' arrest. *See* Dkt. Nos. 38, 38-1, 38-2, 38-3. Although the Court makes no finding concerning Gilbert's intentions or whether any retaliatory conduct occurred, the communications provide additional support for plaintiffs' expressed concerns about the potential misuse of sensitive personal information.

On balance, the Court finds that defendants have not demonstrated that additional questioning concerning plaintiffs' actual immigration status would materially advance the resolution of the claims or defenses. The potential prejudice associated with such inquiry, particularly in light of the nature of the allegations and the supplemental record, outweighs its asserted impeachment value. Accordingly, plaintiffs' request for a protective order concerning immigration status discovery is granted.

D. **Income Tax Returns**

Finally, defendants seek discovery concerning plaintiffs' income tax returns. Defendants initially asserted that the returns were relevant to plaintiffs' earnings, employment histories, economic losses, and mitigation of damages. *See* Dkt. No. 29 at

14-15. In their supplemental submission, defendants additionally emphasize suspected inaccuracies in tax documents and the potential relevance of such information to plaintiffs' credibility. *See* Dkt. No. 40 at 1-2.

Although income tax returns are not absolutely privileged, courts generally require a showing of both relevance and a compelling need for disclosure because the information cannot otherwise be readily obtained. *See Trilegiant Corp. v. Sitel Corp.*, 272 F.R.D. 360, 368 (S.D.N.Y. 2010). Defendants have not satisfied that standard here. Plaintiffs seek recovery of wages allegedly earned, but not paid, during their employment with Adon Farms.. *See* Dkt. No. 1 ¶¶ 55-56, 155-169. The relevant information concerning hours worked and compensation received is ordinarily reflected in employment records, payroll documents, wage statements, and related materials. Defendants have not adequately explained why plaintiffs' complete income tax returns are necessary to determine the amount of compensation owed or why the relevant information cannot be obtained from less intrusive sources. Further, plaintiffs expressly represent that they seek recovery of wages earned but not paid during their employment with defendants, rather than compensation for earnings lost following their employment. *See* Dkt. No. 30 at 12-13. Plaintiffs further disclaim any claim for front pay, back pay, or lost wages arising from their discrimination or forced-labor claims. *See id.* at 8, 13. Accordingly, defendants have not demonstrated that income earned from subsequent employment is relevant to the calculation of plaintiffs' claimed unpaid wages or that mitigation of damages is otherwise at issue.

Defendants' additional assertion that plaintiffs may have submitted inaccurate tax documents likewise does not establish a compelling need for the requested discovery.

Although such information might conceivably bear on credibility, defendants have not identified a sufficiently material connection between the suspected inaccuracies and the claims or defenses to justify disclosure of highly sensitive financial information. The generalized possibility of obtaining impeachment evidence does not establish that complete tax returns are necessary or proportional to the needs of this case.

Accordingly, the Court finds that defendants have not demonstrated the requisite relevance and compelling need for the requested tax-return discovery. Plaintiffs' request for a protective order concerning federal income tax returns is therefore granted.

E. **Defendants' Proposed Alternative Protective Measures**

The Court has also considered defendants' alternative proposal that the disputed information be disclosed to defense counsel while prohibiting disclosure to defendants themselves. *See* Dkt. No. 40 at 2. Although such an arrangement could mitigate certain confidentiality concerns, it does not independently establish that the information is relevant and proportional under Rule 26(b)(1). A confidentiality restriction may appropriately limit the dissemination of otherwise discoverable information, but it does not render discoverable information that falls outside the permissible scope of discovery. Because the Court concludes that defendants have not demonstrated a sufficient basis for the requested additional questioning, an attorneys' eyes only restriction would not remedy that deficiency. Accordingly, the Court declines to adopt defendants' proposed alternative.

V. **Conclusion**

For the foregoing reasons, the Court finds that plaintiffs have demonstrated good cause for protective relief under Rule 26(c). Although defendants have a legitimate interest in challenging plaintiffs' credibility, the requested discovery concerning identification documents, Social Security numbers, immigration status, and income tax returns has not been shown to be sufficiently material or proportional to the needs of the case to justify further examination into these sensitive subjects.

**WHEREFORE**, it is hereby

**ORDERED**, that plaintiff's motion for a protective order (dkt. no. 30) is granted.

**IT IS SO ORDERED.**

Dated: November 13, 2026
Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge